IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 1 OF PA/DE, TRUSTEES OF BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 1 OF PA/DE JOINT APPRENTICES & TRAINING FUND, TRUSTEES OF BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 1 OF PA/DE ANNUITY FUND, TRUSTEES OF BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 1 OF PA/DE PENSION FUND, and TRUSTEES OF BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND<br><br>v.<br><br>TORRADO CONSTRUCTION CO., INC. and LUIS TORRADO, Individually & As President of Torrado Construction Co., Inc. | CIVIL ACTION<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>NO. 17-3297 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                               May 9, 2018

      This action brought under the Labor Management Relations Act (LMRA) and the Employee Retirement Income Security Act of 1974 (ERISA) arises from the failure of an employer to pay employee benefit contributions to union pension funds required under a collective bargaining agreement. The employer contends that pursuant to a joint check agreement, payment of benefit contributions were to be made by a third party, the general contractor, not the employer. In essence, the employer argues the joint check agreement displaced the CBA, absolving it of liability for the contributions due.

      The CBA, not the joint check agreement, governs the employer's obligation to make benefit contributions to the union pension funds. The joint check agreement, by

its own language, does not displace the CBA. Furthermore, as the sole shareholder and officer of Torrado Construction having control over its assets, Luis Torrado is liable for the contributions. Therefore, we shall grant summary judgment in favor of the plaintiffs.

## Background

On August 20, 2012, the Bricklayers and Allied Craftworkers Local 1 of PA/DE (Local 1) and Torrado Construction Company, Inc., as a member of the Employer Bricklayers Association (EBA), executed a collective bargaining agreement (2012-2016 CBA).[1] Luis Torrado, the president and sole shareholder of Torrado Construction, signed the 2012-2016 CBA on behalf of the company.[2] Torrado Construction agreed to pay benefit contributions to the Local and the International Trust Funds in exchange for Local 1 supplying skilled craft workers to perform work for Torrado Construction.[3] The 2012-2016 CBA required employers to pay benefit contributions deducted from its employees' paychecks for each hour worked by or paid to employees covered by the CBA monthly.[4]

---

[1] Pl. Mot. for Summ. J., Statement of Undisputed Facts (SUF) ¶ 2; Mot. for Summ. J., Ex. E, 2012-2016 Collective Bargaining Agreement (2012-2016 CBA) (Doc. No. 17-9). Local 1 is a labor organization as defined in § 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5), and an employee organization within the meaning of § 3(4) of ERISA, 29 U.S.C. §1002(4). The Board of Trustees of the Bricklayers & Allied Craftworkers Local 1 of PA/DE Health and Welfare, Joint Apprentice and Training, Pension, and Annuity Funds (Local Trust Funds), and the Board of Trustees of the Bricklayer & Trowel Trades International Pension Fund (International Trust Funds) are multi-employer benefit plans established and maintained pursuant to Agreements and Declarations of Trust.

[2] SUF ¶ 1; Def. Counter-Statement of Undisputed Facts (CSUF) ¶ 1.

[3] 2012-2016 CBA, p. 3–4; Mot. for Summ. J., Ex. D, 2016-2020 Collective Bargaining Agreement (2016-2020 CBA) (Doc. No. 17-8). The Trust Funds are third-party beneficiaries of the CBAs.

[4] SUF ¶ 11.

The 2012-2016 CBA contained an "evergreen clause" that automatically continued the agreement on an annual basis, in the absence of timely written notice of intent to terminate.[5] At no time did either party express a desire to terminate the agreement.

On May 1, 2016, Local 1 and the EBA, Torrado Construction's designated bargaining agent, negotiated a new CBA (2016-2020 CBA). Torrado Construction paid Local 1 members at new wage rates and was required to contribute to the Funds under the 2016-2020 CBA's terms.[6]

Several months before the 2016-2020 CBA was executed, on March 11, 2016, Allied Construction Services, the general contractor on the Taller Puertorriqueño project in North Philadelphia, hired Torrado Construction to perform brick and masonry work. Torrado Construction employed bricklayers, members of Local 1, to work on the project. After Torrado fell behind in paying contributions, Torrado Construction and Local 1 signed a joint check agreement with the general contractor, Allied, providing that "payments to the Plaintiff Benefit Funds were to be made by joint check endorsed by [Torrado Construction] but mailed directly by Allied to Plaintiffs."[7]

Although Allied sent checks to the plaintiffs for benefit contributions, Torrado Construction concedes that "other contract balances remain unpaid, due and owing" pursuant to the CBA.[8] As to any unpaid contributions owed unrelated to the Taller

---

[5] 2012-2016 CBA, Article 16, p. 11, ECF 10.

[6] SUF ¶ 21; Mot. for Summ. J., Ex. C, Dep. of Luis Torrado (Doc. No. 17-7) at 24:1–25:4.

[7] Resp. to Mot. for Summ. J. (Doc. No. 19) at 2, ECF 3 (emphasis deleted).

[8] *Id.* at 3, ECF 4. Torrado Construction argues that Allied is responsible for these unpaid balances, which is partially the basis for its lawsuit against Allied before the Philadelphia Court of Common Pleas. *Id.*

3

Puertorriqueño project, the defendants contend, without elaborating, that they are actively paying down "some current balances from the last 3 or less months of work on other projects" included in the plaintiffs' claims.[9] The parties dispute the balance of contributions still outstanding on all jobs, including the Taller Puertorriqueño project, which Torrado characterizes as "the lion's share of unpaid principal balances."[10]

An audit covering the period of January 1, 2015 through September 30, 2016 revealed that Torrado Construction had not paid all the required contributions due.[11] To recover unpaid contributions and related charges, Local 1 instituted this action for breach of contract under § 301 of the LMRA and § 315 of ERISA, 29 U.S.C. § 1145, against Torrado Construction and Luis Torrado. It also brought claims against Luis Torrado in his individual capacity for breach of contract under § 301 of the LMRA and breach of fiduciary duty under ERISA, and common law conversion.[12] Moving for summary judgment, the plaintiffs contend that there is no dispute that the defendants failed to make the required contributions, and that Luis Torrado exercised control over fund assets, making him personally liable.[13]

In response, the defendants argue that they are absolved of their obligation under the 2016-2020 CBA and related agreements because a joint checking agreement shifted the obligation to the general contractor. Luis Torrado argues he is not personally liable because he did not use trust fund assets and did not have control over them. He

---

[9] *Id.* at 2, ECF 3.

[10] *Id.*

[11] Mot. for Summ. J., Ex. J, Revised Audit Report (Doc. No. 17-14).

[12] *See* Am. Compl. (Doc. No. 12).

[13] Mot. for Summ. J. (Doc. No. 17-1) at 16.

4

contends he relinquished any right or control over contributions when he entered the joint check agreement.

**Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with " 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587 (citation omitted).

5

## Analysis

The defendants were bound by both the 2012-2016 and 2016-2020 CBAs. First, the evergreen clause in the 2012-2016 CBA automatically continued it.[14] Second, although the defendants did not sign the 2016-2020 CBA, they are still bound by it.[15] As the defendants conceded at oral argument, Torrado Construction's designated bargaining agent, the EBA, entered into the 2016-2020 CBA on behalf of all members.[16]

Instead of disputing the applicability of the CBAs, the defendants contend that the joint check agreement displaced them. They argue that the joint check agreement relieved them of any liability for the contributions owing for work on the Taller Puertorriqueño project and shifted that liability to the general contractor, Allied Construction.

The joint check agreement does not relieve the defendants of their obligation to pay the benefit contributions due under the CBAs. It states:

> General Contractor [Allied] agrees that it will make all payments for the [Benefits] supplied and delivered by Subcontractor [Torrado Construction] to the Project, only to the extent that such payments are otherwise due and owing under the subcontract between [Allied] and [Torrado Construction] on the Project (the "Subcontract"), by joint check made payable to Creditor [Local 1] and [Torrado Construction] until all payments owed to [Torrado Construction] for [Benefits] under the Subcontract have been paid in full.[17]

---

[14] Evergreen clauses are valid and enforceable. *Carpenters Health v. Mgmt. Res. Sys. Inc.*, 837 F.3d 378, 382 & n.19 (3d Cir. 2016) (quoting *Int'l Union of Bricklayers and Allied Craftworkers, Local 5 v. Banta Tile & Marble Co.*, 344 F. App'x 770, 773 (3d Cir. 2009)). Thus, the 2016-2020 CBA continued to control the relationship between the parties. *Bricklayers & Allied Craftworkers Local 1 of PA/DE v. Penn Valley Tile, Inc.*, 175 F. Supp. 3d 487, 492–93 (E.D. Pa. 2016) (quoting *Composition Roofers Union Local No. 30 Welfare Trust Fund v. L.A. Kennedy, Inc.*, Civ. A. No. 93-1558, 1996 WL 220975, at *5 (E.D. Pa. May 2, 1996)).

[15] Tr. of Oral Arg., Apr. 10, 2018 at 28:5–17.

[16] *Id.*

[17] Resp. at 7, ECF 8 (quoting Resp., Exs. 3 & 4, Joint Check Agreements (Doc. Nos. 19-3, 19-4)).

The defendants interpret this agreement to mean that they have "no interest in or claim to the check or funds represented by the check, at any time."[18] They are correct. The funds belonged to the benefit trust funds, not the defendants. Nevertheless, the defendants remained responsible for remitting the earned benefits.

Just because the joint check agreement permitted Allied to write a check payable to both Local 1 and Torrado Construction does not shift the defendants' obligation to pay the contributions to Allied. The agreement clearly states: "Nothing in this agreement shall be deemed to constitute a payment guarantee or a contract between [Allied] and [Local 1]. This agreement shall not give [Local 1] rights as a third-party beneficiary against [Allied]."[19]

The joint check agreement merely establishes a method for facilitating the defendants' payment of the required contributions. It does not delegate the defendants' obligation to Allied, a third party. Nor does it alter the terms of the CBAs. On the contrary, it recognizes the employer's duties under the CBAs. Indeed, the defendants themselves acknowledge this effect. In their response to the motion, they characterize the joint check agreement as providing "the detailed basis on which such payments were to be made" and that it "governed the flow of benefit fund payments."[20]

---

[18] *Id.* at 4, ECF 5 (citing Resp., Exs. 3 & 4, Joint Check Agreements).

[19] Resp., Exs. 3 & 4, Joint Check Agreements.

[20] Resp. at 10, 15, ECF 11, 16.

Allied did not accept liability for delinquent contributions.[21] Nor did Local 1 agree that Torrado Construction was no longer liable for the contributions. Thus, Torrado Construction is liable for breach of contract for failure to pay the contributions due under the CBAs.

ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement" to "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. A failure to do so is a statutory violation of ERISA. Because Torrado Construction failed to make contributions as required by ERISA, the defendants' breach of the CBAs is also a statutory violation under ERISA.

*Luis Torrado's Personal Liability*

The CBAs and the Fund documents establish that benefit contributions become Fund assets on the date they are due.[22] The contributions are then held in trust for the Fund. Furthermore, even putting aside the CBAs, contributions withheld from paychecks are plan assets.[23] *See Solis v. Koresko*, 884 F. Supp. 2d 261, 285 (E.D. Pa. 2012) (citing 29 C.F.R. § 2510.3–102; *Sec. of Labor v. Doyle*, 675 F.3d 187, 203 (3d Cir. 2012)).

---

[21] Even if the joint check agreements were to apply, it does not appear that a joint check agreement was executed for the months of August and September—two of the delinquent monthly payments sought here. Reply in Support of Mot. for Summ. J. (Doc. No. 22) at 7.

[22] SUF ¶ 7 (citing Mot. for Summ. J., Ex. A, Decl. of Funds Admin. Maria Morris (Doc. No. 17-5) ¶ 6; 2016-2020 CBA, p. 8).

[23] *Id.* ¶ 16.

Luis Torrado does not contest that the contributions due were plan assets.[24] Instead, he argues he is not personally liable for the unpaid contributions. He contends that he did not exercise authority or control over them, having ceded that authority and control to Allied by operation of the joint check agreement.[25]

Luis Torrado is personally liable pursuant to § 409 of ERISA, 29 U.S.C. § 1109(a). With respect to a pension benefit plan, a fiduciary is one who "exercises any authority or control over the management or disposition of the plan's assets." *Srein v. Frankford Trust Co.*, 323 F.3d 214, 220–21 (3d Cir. 2003) (citing 29 U.S.C. § 1002(21)(A)). One who administers the plan is a fiduciary only if he has discretionary authority or control. On the other hand, one who controls plan assets assumes fiduciary status even though he does not exercise discretion over them. *Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 273 (3d Cir. 2001).

The Fund documents deemed benefit contributions to be Fund assets when they were due. At that point, Luis Torrado, as the president and sole shareholder of Torrado Construction, had control over them and was responsible for remitting contributions to the funds.

---

[24] Tr. of Oral Arg., Apr. 10, 2018 at 21:6–11. In determining whether unpaid contributions are plan assets, we examine the language of the Plan documents. *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 37 (3d Cir. 1991); *see also Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 428 (3d Cir. 2013) ("[T]he ordinary notions of property rights determine whether an asset is a plan asset, and that we should look to the plan and the plan documents in making this determination."); *Trustees of Nat. Elevator Indus. Pension v. Lutyk*, 140 F. Supp. 2d 447, 455 & n.1 (E.D. Pa. 2001).

[25] Resp. at 11, ECF 12. Notably, not all the delinquent contributions are related to the Taller Puertorriqueño project. Torrado Construction also did not remit contributions due for work on other projects. Hence, even if the joint check agreement relieved Torrado Construction of its obligation to pay contributions for work on the Taller Puertorriqueño project, Torrado Construction would still be liable for at least some of the delinquent contributions.

The Trust documents establish the employer's fiduciary duties. They provide that "[n]onpayment of contributions beyond the date on which they are due shall constitute a breach of the Employer's fiduciary obligation with respect to Fund assets. . . . [T]he Trustees shall have the authority and right to seek personal liability against an owner, principal, or officer of an Employer for breach of fiduciary duties with respect to the disposition of such contributions as assets of the Fund."[26]

Having authority or control over the plans' assets, Luis Torrado is a fiduciary under ERISA. As a fiduciary, he is "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a). Luis Torrado must restore the unpaid plan assets. *Bricklayers*, 175 F. Supp. 3d at 496 (citing *Leckey v. Stefano*, 501 F.3d 212, 228 (3d Cir. 2007)). Because Luis Torrado failed to remit contributions to the funds in breach of his duties, he is individually liable.

With respect to Count IV against Luis Torrado for common law conversion, the plaintiffs have presented no evidence that Luis Torrado converted the unpaid contributions. There is no basis for holding him liable for conversion. Thus, we shall enter summary judgment for the defendant as to Count IV.[27]

---

[26] Mot. for Summ. J., Ex. G, Amendment 2 to Agreement and Decl. of Trust of the Health and Welfare Fund (Doc. No. 17-11) at ECF 3.

[27] *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 223 (3d Cir. 2009). "[U]nder the right circumstances, district courts are entitled to enter summary judgment sua sponte. A court, however, must provide the parties with notice of its intention to consider granting summary judgment so that they have an opportunity to marshal evidence on the motion for submission to the court." *Id.* (internal citations and quotation marks omitted) (quoting *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069–

*Damages Calculation*

The 2016-2020 CBA provides that once benefit contributions become due, title to them vests with the Trust Funds.[28] In other words, benefit contributions become plan assets when they are earned. Delinquent contributions to the Funds are assessed interest and liquidated damages. For late contributions to the Local Annuity Fund, interest at the rate of 12% per annum and liquidated damages in the amount of 10% of the principal amount due are charged. Delinquent contributions to the International Pension Fund are subject to interest at the rate of 15% per annum and liquidated damages in the amount of 20% of the principal amount due. Costs and attorney fees are assessed for late contributions to both the Local Annuity Fund and the International Pension Fund.[29]

On November 17, 2016, an audit revealed that Torrado Construction had failed to pay contributions in accordance with the 2016-2020 CBA for the period of January 1, 2015 through September 30, 2016.[30] As of January 9, 2017, the defendants paid $37,749.35 in principal contributions, leaving a balance of $61,608.99. This unpaid amount, plus interest and liquidated damages on the remaining balance, and the cost of the audit, is $84,841.06.[31]

---

70 (3d Cir. 1990)). Here, the parties had notice and an opportunity to present evidence as to the conversion claim during oral argument.

[28] SUF ¶ 7 (quoting 2016-2020 CBA, Art. VI).

[29] *Id.* ¶¶ 8–10, 22; CSUF ¶ 22; Mot. for Summ. J., Ex. A ¶ 9; 2016-2020 CBA, p. 7.

[30] Mot. for Summ. J., Ex. J, Revised Audit Report. The audit was originally conducted on November 17, 2016, and was subsequently revised on January 23, 2017. *Id.*

[31] *Id.* at ECF 3; Mot. for Summ. J., Ex. I, Damages Summ. (Doc. No. 17-13) at ECF 2.

The plaintiffs also calculated the current unpaid contributions for the months of November 2017, December 2017, and January 2018, as well as liquidated damages and interest calculated pursuant to late payments received as of February 14, 2018. The delinquent contributions, including liquidated damages and interest, total $141,242.31. The liquidated damages and interest on late payments received as of February 14, 2018 is $98,129.73. These calculations are not current.

Although the defendants dispute the calculation of damages, they present no evidence that contradicts the unpaid principal contributions as calculated by the plaintiffs. The amounts of principal contributions for which the defendants are, jointly and severally, liable, are $171,466.06 to the Local Benefit Fund and $16,345.52 to the International Benefit Fund. Interest, liquidated damages, attorneys' fees, and costs must be calculated before judgment may be entered. Therefore, the plaintiffs shall file a proposed judgment order no later than May 15, 2018.